**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

BLITZ TELECOM CONSULTING, LLC,

       Plaintiff/Counter-Defendant,

v.                                          Case No:  6:14-cv-307-Orl-40GJK

PEERLESS NETWORK, INC.,

       Defendant/Counter-Plaintiff.

_____

LOCAL ACCESS, LLC and BLITZ
TELECOM CONSULTING, LLC,

       Plaintiffs/Counter-Defendants,

v.                                          Case No:  6:14-cv-399-Orl-40TBS

PEERLESS NETWORK, INC.,

       Defendant/Counter-Plaintiff.

_____

## OMNIBUS ORDER

This cause comes before the Court on the following:

1. Peerless Network, Inc.'s Motion to Consolidate These Related Cases for Trial (Case No. 6:14-cv-307-Orl-40GJK, Doc. 171), filed January 25, 2016;

2. Opposition of Blitz Telecom Consulting, LLC and Local Access, LLC to Peerless Network, Inc.'s Motion to Consolidate (Case No. 6:14-cv-307-Orl-40GJK, Doc. 188), filed February 8, 2016;

3. Peerless Network, Inc.'s Motion to Consolidate These Related Cases for Trial (Case No. 6:14-cv-399-Orl-40TBS, Doc. 188), filed January 25, 2016;

1

4. Opposition of Blitz Telecom Consulting, LLC and Local Access, LLC to Peerless Network, Inc.'s Motion to Consolidate (Case No. 6:14-cv-399-Orl-40TBS, Doc. 217), filed February 8, 2016;

5. Plaintiff's Renewed Motion for Leave to Amend Complaint and Incorporated Memorandum of Law (Case No. 6:14-cv-307-Orl-40GJK, Doc. 176), filed January 29, 2016; and

6. Peerless's Response in Opposition to Plaintiff's Renewed Motion to Amend Complaint (Case No. 6:14-cv-307-Orl-40GJK, Doc. 198), filed February 16, 2016.

Upon consideration, review of the parties' respective memoranda, and with the benefit of oral argument, the Court finds it inappropriate to consolidate these cases for trial and unnecessary to grant Blitz leave to amend its Complaint in Case No. 6:14-cv-307-Orl-40GJK.

## I.   BACKGROUND[1]

The litigation in these two cases arises out of the business relationships between and among Blitz Telecom Consulting, LLC ("Blitz"), Local Access, LLC ("Local Access"), and Peerless Network, Inc. ("Peerless").  Blitz's business involves purchasing telephone numbers from various telecommunications carriers and subsequently marketing and reselling those numbers in bulk, along with other associated services, to companies and telecommunications carriers who offer telephone services to end consumers.  Peerless is a telecommunications carrier whose subsidiaries provide such telephone services to

---

[1] This recitation of the backgrounds of these cases is meant to provide context for the motions presently before the Court and shall not be construed as the Court's factual findings or legal conclusions on any issue.

end consumers.  Local Access is a telecommunications carrier which Blitz formed to provide certain specific services to and for Peerless.

On November 9, 2010, Blitz and Peerless entered into an IP Control Agreement (the "2010 Contract") whereby Peerless agreed to assign telephone numbers to Blitz for a fee.  The Contract contemplates that Blitz would then use these telephone numbers to generate traffic on Peerless's networks.  In exchange, Peerless agreed to pay a 30% commission to Blitz each month based on the traffic generated, what the parties refer to as the "co-marketing fee."  From November 2010 to about May or June 2012, Peerless accounted for and paid the monthly co-marketing fees to Blitz.  However, on April 11, 2012, Peerless notified Blitz that it would no longer remit co-marketing fees to Blitz due to a federal district court decision in an unrelated matter in Texas (the "*IDT* Decision").  Peerless asserted that the *IDT* Decision materially affected its performance of the 2010 Contract and therefore provided legal justification for Peerless to cease paying co-marketing fees.

During the same time Blitz and Peerless were performing under the 2010 Contract, Blitz's principals began exploring the possibility of selling a portion of Blitz's assets.  To that end, Blitz contacted a number of third parties to gauge their interest in such a transaction.  Blitz ultimately received an offer from one of Peerless's competitors and Blitz informed Peerless that it intended to accept the offer.  Not wanting to see Blitz's assets sold to a competitor, however, Peerless proposed an alternative business arrangement that it claimed would prove lucrative to both parties.  Specifically, Peerless suggested that Blitz create a new entity—Local Access—which would, among other things, contract with Peerless to become its exclusive provider of certain telecommunications services.  The

end result would be that Local Access, and therefore Blitz, would collect revenue on significantly more telecommunications traffic.

Blitz accepted Peerless's proposal, rejected the asset purchase offer from Peerless's competitor, and formed Local Access. In furtherance of the business arrangement envisioned by Peerless, Local Access and Peerless entered into a Homing Tandem Service Agreement on June 1, 2012 (the "2012 Contract"). However, Blitz and Local Access claim that Peerless immediately failed to perform the 2012 Contract. After repeated demands for Peerless to uphold its end of the bargain, Blitz and Local Access concluded that Peerless's proposed business arrangement was nothing more than a ruse to keep Blitz from selling its assets to Peerless's competitor.

Blitz has filed two lawsuits in this Court against Peerless based on the above-described conduct. In the first (the "307 Case"), Blitz claims that Peerless breached the 2010 Contract by failing to pay co-marketing fees for the traffic Blitz placed on Peerless's networks. In the second (the "399 Case"), Blitz and Local Access sue Peerless for fraudulently inducing them to reject the third-party offer for Blitz's assets and to pursue Peerless's fictional arrangement. Additionally in the 399 Case, Blitz sues Peerless for tortiously interfering in its business relationship with the third-party buyer and Local Access sues Peerless for breaching the 2012 Contract. Peerless has now filed a renewed motion to consolidate these two cases based on what it contends are commonalities of facts and legal issues.[2] Blitz also now moves for a second time to amend its Complaint in the 307 Case to reflect certain damages and claims for relief which Blitz worries are

---

[2]   The Court denied Peerless's first motion to consolidate on March 14, 2015. (Case 307, Doc. 43; Case 399, Doc. 49).

not covered by its current pleading.  The Court heard oral argument on both motions at the February 17, 2016 final pretrial conference for the 399 Case.

## II.   DISCUSSION

### A.   Peerless's Motion to Consolidate

Peerless moves to consolidate the 307 and 399 Cases because it contends that they involve many of the same factual and legal issues that will need to be decided by a jury.  Peerless additionally submits that concerns about inconsistent verdicts and judicial efficiency counsel heavily in favor of consolidation.

Federal Rule of Civil Procedure 42 allows a district court to consolidate actions that involve common questions of law or fact.  Fed. R. Civ. P. 42(a).  When determining whether cases should be consolidated, the district court considers a number of factors, including (1) the risk of prejudice in allowing the matters to proceed separately, (2) the potential for confusion of facts or legal issues, (3) the risk of inconsistent verdicts, (4) the burden on parties, witnesses, and the court, and (5) the length of time and relative expense involved in conducting a single or multiple trials.  *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985).  The decision to consolidate ultimately rests within the discretion of the district court.  *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1012 (5th Cir. 1977).[3]

The Court finds that consolidation is inappropriate.  While both cases involve Blitz and Peerless and the evolution of their relationship over the course of several years, the similarities end there.  Neither case involves the same facts, the same contracts, or the

---

[3]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions from the former Fifth Circuit handed down prior to October 1, 1981.

same claims for relief.  As the Court explained in denying Peerless's first motion to consolidate:

> [T]he Blitz versus Peerless litigation involves a fairly straightforward breach of contract wherein Blitz contends Peerless had a duty to remit certain payments and failed to do so. Conversely, the lawsuit filed by Blitz and Local Access involves a completely separate business relationship entered into between Local Access and Peerless, the alleged fraud which induced that relationship, and allegations of tortious interference with a competing bidder for that business.
>
> A jury will likely be presented with a brief overview of the business relationship that existed between Blitz and Peerless which gave rise to the creation of Local Access in order to understand the alleged tortious interference and fraudulent inducement claims alleged in the second case. The jury will not, however, be required to know anything about the alleged failure by Peerless to remit money to Blitz pursuant to a separate contract in order to decide the tortious interference and fraudulent inducement allegations. Similarly, a jury deciding the first breach of contract/failure to remit payment action will not need to understand the creation of Local Access and the dispute arising thereafter in order to duly consider the matter.

(307 Case, Doc. 43, p. 5).  Nothing in Peerless's renewed motion leads the Court to conclude that the posture of either case has changed in such a way so as to warrant consolidation.

The Court also finds that Peerless's concerns in requiring the cases to proceed separately are either easily remedied or non-existent.  Peerless argued at the February 17, 2016 final pretrial conference that allowing the cases to proceed separately posed a risk of inconsistent verdicts because discovery in the 399 Case revealed that Blitz seeks at least a portion of the co-marketing fees it also intends to recover in the 307 Case, essentially amounting to a double recovery.  However, many mechanisms exist to prevent such a circumstance, including stipulation among the parties, appropriate

instruction to the jury on the facts and legal issues to be decided, a clear and precise verdict form, and properly supported pre- or post-trial motions.

Further, to the extent Peerless claims that these cases should be consolidated because Peerless asserts the same defense in both actions—that the parties renegotiated the 2010 Contract due to changing telecommunications compensation rules—Peerless never pleaded this defense (or any facts that would place Blitz on notice that such a defense might exist) in the 307 Case.  To the contrary, Peerless's answer in the 307 Case acknowledges that Peerless *attempted* to renegotiate the 2010 Contract with Blitz, but never that the parties actually reached an agreement.  (Doc. 30, ¶ 20). Indeed, Peerless's sole defense to liability throughout the 307 Case has been that the *IDT* Decision provided a legal basis for it to stop paying co-marketing fees to Blitz under the 2010 Contract.  It was not until the Court foreclosed this theory on summary judgment that Peerless first raised the issue of renegotiation as a defense.[4]  It therefore appears that Peerless now attempts to use consolidation as a Trojan Horse to insert a defense its alleges in the 399 Case into the 307 Case.

Finally, the Court finds that the burdens on the parties, witnesses, and the Court in conducting two trials do not outweigh the potential for confusion that could result from combining and comingling the numerous claims at issue in these cases.  In the same vein, prejudice would more likely result from consolidation than be avoided.  The ends of justice will be best served by allowing both lawsuits to proceed on their own distinct factual backgrounds.

---

[4]   The Court further notes that Peerless has never moved to amend its answer, affirmative defenses, or counterclaims in the 307 Case to reflect either that the parties renegotiated the 2010 Contract or that their attempt at renegotiation provides a defense to any of Blitz's claims.

### B.    Blitz's Motion to Amend Complaint

Blitz moves a second time to amend its Complaint in the 307 Case.  First, Blitz wishes to resolve certain ambiguities regarding the damages it seeks under the 2010 Contract—namely, that it is entitled to recover fees from Peerless that are not explicitly identified in the agreement but that Peerless agreed to pay by way of either modification of the contract or through its course of performance.  Second, Blitz wishes to clarify the terms of the 2010 Contract based on how it believes the parties were performing their obligations.  Third, Blitz wishes to allege an additional claim for unjust enrichment to recover damages Blitz worries are not embraced within the scope of its breach of contract claim.

Blitz requests leave to amend its Complaint after the deadline for doing so has long passed.  Although Federal Rule of Civil Procedure 15 requires the liberal amendment of pleadings, a motion for leave to amend filed after the amendment deadline is treated as a motion to modify the court's scheduling order.  *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam).  Federal Rule of Civil Procedure 16 governs the district court's scheduling and management of cases.   That rule provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Rule 16(b)(4)'s "good cause" standard is a rigorous one, focusing not on the good faith of or the potential prejudice to any party, but rather on the parties' diligence in complying with the court's scheduling order.  *Sosa*, 133 F.3d at 1418; *Febus-Cruz v. Sauri-Santiago*, 652 F. Supp. 2d 166, 170 n.3 (D.P.R. 2009).

For the same reasons stated by the Court in its June 4, 2015 Order denying Blitz's first motion to amend and July 7, 2015 Order denying Blitz's motion for reconsideration, the Court finds that Blitz fails to demonstrate good cause to amend its Complaint beyond

the deadline for doing so.  (*See* Case 307, Docs. 86, 95).  Blitz raises no new grounds which would demand that the Court deviate from its previous rulings.  Moreover, even if Blitz could be said to have established good cause for amending its Complaint, the Court finds that Blitz's proposed amendments would be unnecessary.  Blitz's breach of contract and quantum meruit claims already adequately place Peerless on notice that Blitz seeks to recover all damages it incurred due to Peerless's alleged breach of the 2010 Contract. Because the Court need not grant leave to amend where the proposed amendment would serve no purpose, Blitz's motion is due to be denied on this basis as well.  *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam).

## III.   CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Peerless Network, Inc.'s Motion to Consolidate These Related Cases for Trial (Case No. 6:14-cv-307-Orl-40GJK, Doc. 171) is **DENIED**.

2. Peerless Network, Inc.'s Motion to Consolidate These Related Cases for Trial (Case No. 6:14-cv-399-Orl-40TBS, Doc. 188) is **DENIED**.

3. Plaintiff's Renewed Motion for Leave to Amend Complaint and Incorporated Memorandum of Law (Case No. 6:14-cv-307-Orl-40GJK, Doc. 176) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on February 19, 2016.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record